

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
BEAUMONT DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | § § | |
| v. | § § | CRIMINAL ACTION NO. 1:06-CR-65-TH (ALL) |
| KUN YUN JHO and OVERSEAS SHIPHOLDING GROUP, INC. | § § § | |

# MEMORANDUM OPINION AND ORDER ADOPTING REPORTS AND RECOMMENDATIONS AS MODIFIED HEREIN AND PARTIALLY GRANTING DEFENDANTS' MOTIONS TO DISMISS

Before the Court is a *Report and Recommendation on Defendant Jho's Motions to Dismiss* [Clerk's Docket No. 108] and a *Report and Recommendation on Defendant Overseas Shipholding Group, Inc.'s Motion to Dismiss* [Clerk's Docket No. 109], both of which were filed on November 13, 2006. Defendants filed objections [Clerk's Docket Nos. 100, 117] to the reports and recommendations, to which the government did not respond. The Court heard argument on the objections on two separate occasions. Having considered the foregoing, the Court enters this memorandum opinion and order adopting the reports and recommendations as modified herein and partially granting defendants' motions to dismiss [Clerk's Docket Nos. 18, 59 and 63].

## I. MODIFICATIONS

The reports and recommendations are modified so as to grant defendants' motions to dismiss Counts 3 through 10 criminally charging defendants with violations of 33 C.F.R. § 151.25 and that portion of Count 1 alleging that defendants conspired to violate 33 C.F.R. § 151.25. *See Second Superceding Indictment* [Clerk's Docket No. 46].

In Counts 3-10, the government charges that:

> [Jho and OSG] did knowingly fail to maintain an Oil Record Book for the *Pacific Ruby* in which all disposals of oil residue and discharges overboard and disposals otherwise of oily mixtures, slops from bilges and bilge water that accumulated in machinery spaces were fully recorded. Specifically, on each date Defendant Jho failed to maintain an accurate Oil Record Book, by failing to disclose exceptional discharges in which overboard discharges of oily mixtures, slops from bilges and bilge water that accumulated in machinery spaces had been made without the use of properly functioning Oil Water Separator and Oil Content Meter and falsely indicating the proper use of required pollution prevention equipment....

*Second Superceding Indictment* at ¶ 22 [Clerk's Docket No. 46]. In Count 1, the government charges that defendants violated 18 U.S.C. § 371 when they allegedly conspired:

> To knowingly fail to maintain an Oil Record Book for the *Pacific Ruby* in which did [*sic*] knowingly fail to maintain an Oil Record Book for the *Pacific Ruby* in which all disposals of oil residue and discharges overboard and disposals otherwise of oily mixtures, slops from bilges and bilge water that accumulated in machinery spaces were fully recorded, in violation of Title 33 United States Code, section 1908(a) and Title 33, Code of Federal Regulation, sections 151.25(a) and 151.25(h).

The charges alleged in Counts 3 through 10 of the *Second Superceding Indictment* are brought pursuant to the enforcement provision of the ACT TO PREVENT POLLUTION FROM SHIPS (APPS), codified at 33 U.S.C. § 1901 *et seq.* APPS in the federal law implementing two related international treaties[1] regulating pollution discharges from ships to which the United States is a signatory nation. *See United States v. Abrogar*, 459 F.3d 430, 431-32 (3d Cir. 2006).

APPS authorizes the U.S. Coast Guard to issue regulations implementing procedures, standards and rules commensurate with the MARPOL Protocol. 33 U.S.C. § 1903; 33 C.F.R. § 151.01 *et seq.* The substantive regulation defendants are charged with violating essentially incorporates MARPOL's oil

---

[1] Collectively referred to as the MARPOL Protocol, the two treaties APPS codifies are the 1973 INTERNATIONAL CONVENTION FOR THE PREVENTION OF POLLUTION FROM SHIPS and the PROTOCOL OF 1978 RELATING TO THE INTERNATIONAL CONVENTION FOR THE PREVENTION OF POLLUTION FROM SHIPS. These treaties were negotiated by member nations of the International Maritime Organization (IMO), a mutilateral body formed in 1948.

record book requirements into federal law. 33 C.F.R. § 151.25. *See Second Superceding Indictment* at ¶ 22 [Clerk's Docket No. 46]. Entitled "Oil Record Book", this regulation requires that:

(a) EACH OIL TANKER OF 150 GROSS TONS AND ABOVE, SHIP OF 400 GROSS TONS AND ABOVE OTHER THAN AN OIL TANKER, AND MANNED FIXED OR FLOATING DRILLING RIG OR OTHER PLATFORM SHALL MAINTAIN AN OIL RECORD BOOK PART I (MACHINERY SPACE OPERATIONS). AN OIL TANKER OF 150 GROSS TONS AND ABOVE OR A NON OIL TANKER THAT CARRIES 200 CUBIC METERS OR MORE OF OIL IN BULK, SHALL ALSO MAINTAIN AN OIL RECORD BOOK PART II (CARGO/BALLAST OPERATIONS).

\* \* \*

(d) ENTRIES SHALL BE MADE IN THE OIL RECORD BOOK ON EACH OCCASION, ON A TANK TO TANK BASIS IF APPROPRIATE, WHENEVER ANY OF THE FOLLOWING MACHINERY SPACE OPERATIONS TAKE PLACE ON ANY SHIP TO WHICH THIS SECTION APPLIES—

(1) BALLASTING OR CLEANING OF FUEL OIL TANKS;
(2) DISCHARGE OF BALLAST CONTAINING AN OILY MIXTURE OR CLEANING WATER FROM FUEL OIL TANKS;
(3) DISPOSAL OF OIL RESIDUE; AND
(4) DISCHARGE OVERBOARD OR DISPOSAL OTHERWISE OF BILGE WATER THAT HAS ACCUMULATED IN MACHINERY SPACES.

\* \* \*

(h) EACH OPERATION DESCRIBED IN [PARAGRAPHS (D)] OF THIS SECTION SHALL BE FULLY RECORDED WITHOUT DELAY IN THE OIL RECORD BOOK SO THAT ALL THE ENTRIES IN THE BOOK APPROPRIATE TO THAT OPERATION ARE COMPLETED. EACH COMPLETED OPERATION SHALL BE SIGNED BY THE PERSON OR PERSONS IN CHARGE OF THE OPERATIONS CONCERNED AND EACH COMPLETED PAGE SHALL BE SIGNED BY THE MASTER OR OTHER PERSON HAVING CHARGE OF THE SHIP.

\* \* \*

(j) THE MASTER OR OTHER PERSON HAVING CHARGE OF A SHIP REQUIRED TO KEEP AN OIL RECORD BOOK SHALL BE RESPONSIBLE FOR THE MAINTENANCE

OF SUCH RECORD.[2]

33 C.F.R. § 151.25.

Violation of the MARPOL Protocol, APPS, or the Coast Guard regulations issued thereunder is made unlawful by APPS. 33 U.S.C. §1907(a). While it is true that the enforcement provision found in APPS contemplates both criminal and civil penalties, the scope of enforcement practices is not as broad as that provision reads on its face. 33 U.S.C. § 1908. This is because section 1908 must be read in light of section 1912, which provides that "any action taken under [Chapter 33] shall be taken in accordance with international law." 33 U.S.C. § 1912. In this way, the civil and criminal enforcement scheme created by APPS integrates and is circumscribed by principles of customary international law.

The UNITED NATIONS CONVENTION ON THE LAW OF THE SEA (UNCLOS) is a codification of customary international law negotiated under the auspices of a United Nations conference. THIRD UNITED NATIONS CONFERENCE ON THE LAW OF THE SEA, 21 I.L.M. 1245 (1982); *Sarei v. Rio Tinto*, 456 F.3d 1069 (9th Cir. 2006) (*citing United States v. Alaska*, 503 U.S. 569, 588 n. 10, 112 S. Ct. 1606, 118 L. Ed.2d 222 ("The United States ... has recognized that [the UNCLOS's] baseline provisions reflect customary international law"); *see also* LORI F. DAMROSCH ET AL., *International Law: Cases and Materials* (4th ed. 2001)(most provisions of the UNCLOS "are clearly established customary law of the sea").

Although UNCLOS has been signed by the President and forwarded to the Senate, it has not yet been ratified. It is nevertheless appropriate for this Court to consider UNCLOS jurisdictional provisions as they relate to the prosecutions at bar. *Lauritzen v. Larsen*, 345 U.S. 571, 582, 73 S. Ct. 921, 97 L. Ed. 1254 (1953) (courts generally defer to international maritime laws of "impressive maturity and universality"); *see also United States v. Royal Caribbean Cruises*, 24 F. Supp.2d 155, 159 (D.C. P.R. 1997). "The submission of the treaty to the Senate expresses to the international community the United States' ultimate intention to be bound by the pact." *Id.* Pending a treaty's ratification by the Senate, "the United States is bound to uphold the purpose and principles of the agreement." *Id.* Conversely, "a

---

[2] Although it is not necessary for the Court to reach this point, it is worth noting that Captain Jho—as the cheief engineer but not the master of the *Pacific Ruby*—is not even the person required by the Coast Guard regulations to maintain the oil record book. 33 C.F.R. § 151.25(j).

state that has signed the agreement or expressed its consent to be bound is obliged to refrain from acts that would defeat the object and purpose of the agreement." RESTATEMENT (THIRD) OF FOREIGN RELATIONS LAW § 312(3).

UNCLOS contains very specific and authoritative rules regarding jurisdiction to enforce marine pollution. UNCLOS specifically confers jurisdiction over marine pollution in article 216, which provides:

> LAWS AND REGULATIONS ADOPTED IN ACCORDANCE WITH THIS CONVENTION AND APPLICABLE INTERNATIONAL RULES AND STANDARDS ESTABLISHED THROUGH COMPETENT INTERNATIONAL ORGANIZATIONS OR DIPLOMATIC CONFERENCE FOR THE PREVENTION, REDUCTION AND CONTROL OF POLLUTION OF THE MARINE ENVIRONMENT BY DUMPING SHALL BE ENFORCED:
>
> (a)   BY THE COASTAL STATE WITH REGARD TO DUMPING WITHIN ITS TERRITORIAL SEA OR ITS EXCLUSIVE ECONOMIC ZONE OR ONTO ITS CONTINENTAL SHELF;
>
> (b)   BY THE FLAG STATE WITH REGARD TO VESSELS FLYING ITS FLAG OR VESSELS OR AIRCRAFT OF ITS REGISTRY....

THIRD UNITED NATIONS CONFERENCE ON THE LAW OF THE SEA, 21 I.L.M. 1245, 1311 (1982). This provision is a codification of the long-standing international maritime rule known as "the law of the flag." Under this jurisdictional principle, a ship is considered part of the territory of the sovereignty whose flag it flies, and the ship does not lose that character when in the territorial limits of another sovereignty. *Lauritzen v. Larsen*, 345 U.S. 571, 73 S. Ct. 921, 97 L. Ed. 1254 (1953). The flag state is responsible for ensuring that vessels flying its flag comply with international rules. For this reason, the flag state has primary responsibility for the enforcement of marine pollution laws.

The law of the flag principle recognizes the right of non-flag states to seek redress for marine pollution in limited circumstances. Under UNCLOS, the coastal state has jurisdiction to enforce international pollution rules when the foreign vessel dumps pollution within the coastal state's territorial sea, exclusive economic zone or continental shelf. THIRD UNITED NATIONS CONFERENCE ON THE LAW OF THE SEA ART. 16, 21 I.L.M. 1245, 1311 (1982). Moreover, the international scheme established by UNCLOS contemplates the levying of civil fines by non-flag states. Regarding penalties for

violations of marine pollution laws, article 230(2) of UNCLOS provides as follows:

> <u>Monetary penalties only</u> may be imposed with respect to violations of national laws and regulations or applicable international rules and standards for the prevention, reduction and control of pollution of the marine environment, committed by foreign vessels in the territorial sea, <u>except in the case of a wilful and serious act of pollution in the territorial sea</u>.
>
> Third United Nations Conference on the Law of the Sea, 21 I.L.M. 1245, 1315 (1982)(emphasis added).

The Court is of the opinion that long-standing principles of international law made specifically applicable to APPS by section 1912 require dismissal of the criminal charges alleging violation of the Coast Guard regulations. Here, the United States government is seeking to criminally prosecute a foreign flag ship for alleged violations of U.S. Coast Guard regulations that occurred aboard ship and outside U.S. waters. 33 C.F.R. § 151.25. Because the government has not charged defendants with an act of pollution in U.S. waters, the government may only pursue civil penalties for violations of Coast Guard regulations by foreign-flag ship personnel that occurred aboard the *Pacific Ruby*. UNCLOS art. 230(2). Maintenance of a criminal prosecution on these facts runs afoul of well-established law of the flag principles which seek to ensure uniformity, comity and reciprocity among sea-faring nations. It is for this reason that Counts 3 through 10 alleging violation of 33 C.F.R. § 151.25 and the portion of Count 1 alleging that defendants conspired to violate 33 C.F.R. § 151.25 must be dismissed.

## II. ORDER

IT IS THEREFORE ORDERED that the *Report and Recommendation on Defendant Jho's Motions to Dismiss* [Clerk's Docket No. 108] and the *Report and Recommendation on Defendant Overseas Shipholding Group, Inc.'s Motion to Dismiss* [Clerk's Docket No. 109] are hereby **ADOPTED AS MODIFIED HEREIN**.

IT IS FURTHER ORDERED that the defendants' motions to dismiss [Clerk's Docket Nos. 18, 59 and 63] are hereby **GRANTED** to the extent they seek dismissal of Counts 3 through 10 alleging

violation of 33 C.F.R. § 151.25 and the portion of Count 1 alleging that defendants conspired to violate 33 C.F.R. § 151.25. *See Second Superceding Indictment* [Clerk's Docket No. 46].

**SO ORDERED.**

**SIGNED** this the 4 day of **December, 2006.**

_____
Thad Heartfield
United States District Judge